

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

**JAN 2 8 2019**

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

JULIO CESAR ROJAS-
GUEVARA,                                      :
                                             :
                                             :
          Plaintiff,                         :
                                             :
                                             :   CIVIL ACTION NO.
          v.                                 :   2:17-CV-00255-RWS
                                             :
                                             :
HEATHER N. DUNN,                             :
Individually, JESSICA MASON,                 :
Individually, and JOHN DOE,                  :
Individually.                                :
                                             :
                                             :
          Defendants.                        :

## ORDER

This is a case of mistaken identity. On November 25, 2015, Plaintiff

Julio Cesar Rojas-Guevara was arrested and charged with statutory rape—a

crime he did not commit. As a result, Plaintiff spent nearly two months in jail.

Four months later, after realizing the mistake, the prosecutor entered a nolle

prosequi. Plaintiff is now suing that prosecutor, Heather N. Dunn, and an

investigator with her office, Jessica Mason, alleging that they are responsible

for Plaintiff's unlawful arrest and detention.

Plaintiff filed his Complaint on November 24, 2017. Both Defendants

Dunn and Mason filed Motions to Dismiss [6]&[7]. More recently, Plaintiff

filed a Motion for Leave to Amend the Complaint [15].  Those three motions are now before the Court.  After reviewing the record, the Court enters the following Order.

## I.    Motion for Leave to Amend [15]

On May 25, 2018, in response to Defendants' motions to dismiss, Plaintiff moved for leave to amend his Complaint.  Plaintiff wishes to include additional facts that he believes rectify the shortcomings Defendants identified in their dispositive motions.  Both Defendants responded to Plaintiff's motion, arguing that the proposed Complaint suffers from the same flaws as the original.  Plaintiff has not filed a reply.[1]

### A.    Allegations in the Proposed Amended Complaint

In 2009, police officers in Cumming, Georgia, responded to a call announcing that a 14-year-old girl, "K.N.," who had been reported as a runaway was found.  (Proposed First Am. Compl. ("Am. Compl."), Dkt. [15-1] ¶ 9.)  K.N. told officers she had been with two Hispanic males and that she had sexual intercourse with one of them—a 21-year-old named Ceasar Rojas.  (Id.

---

[1]  Plaintiff did, however, file responses to Defendants' motions to dismiss, (Dkt. [11, 12]).  Some of the arguments made in those submissions are applicable to the proposed Complaint, and the Court has evaluated them.

AO 72A
(Rev.8/82)

¶¶ 9–12.) K.N. explained that she had been at Rojas's house, and she gave officers the address. (Id. ¶¶ 11–13, 16.) K.N. also said that she knew Rojas's phone number, that he drove a white truck, and that he had a "scar on his hand." (Id. ¶ 16.)

A week later, Officer Zimbardi with the City of Cumming Police Department swore out a warrant for the arrest of Ceasar Rojas on charges of statutory rape. (Id. ¶ 17.) Though sparse on identifying characteristics, Officer Zimbardi's affidavit included the address given by K.N. and labeled Rojas's race as "H." (Id.)

Ceasar Rojas was never arrested. But in the fall of 2015, Defendants Dunn and Mason set out to find and indict him for the 2009 statutory rape of K.N. (Id. ¶ 18.) Their information about Rojas was limited, as Defendants knew only "his alleged name, his last known home address, and the type of car that he drove in 2009." (Id.)

During their search, Defendants found Plaintiff's name in a government database. (Id. ¶ 19.) Aside from being Hispanic and having the name "Rojas," Plaintiff had nothing in common with Ceasar Rojas. (Id.) Nevertheless, Defendants ignored the discrepancies and proceeded to make a series of

3

deductions that linked the two. (<u>Id.</u> ¶ 21.)[2]  Defendants, for instance, deduced

that Rojas still lived in Cumming but that he moved to a different address, that

Plaintiff and Rojas were close enough in age, and that the differences in their

names were inconsequential. (<u>Id.</u>)  Defendants did not interview any witnesses

in reaching these conclusions or otherwise investigate beyond their initial

search. (<u>Id.</u> ¶¶ 20, 22.)  Yet, Defendant Dunn elected to purse Plaintiff's arrest,

and Defendant Mason knew that she would, but failed to intervene. (<u>Id.</u>

¶ 24–26.)

 In November 2015, the Forsyth County District Attorney's Office

obtained an indictment against Plaintiff for the statutory rape of K.N. (<u>Id.</u>

¶ 25.) Defendant Dunn then applied for a bench warrant. (<u>Id.</u> ¶ 26.) Later that

month, Plaintiff was arrested pursuant to the warrant after he was pulled over

while driving. (<u>Id.</u> ¶ 27.) As a result, Plaintiff spent nearly two months in jail

before being released on bond. (<u>Id.</u> ¶ 28.) In April 2016, Defendant Dunn

---

 [2] Plaintiff goes on to detail the differences as follows: "[T]hey have different
names and lived at different addresses.  Ceasar Rojas has a brother named Antonio,
and [Plaintiff] has a sister named Anayell, but no brother." (Am. Compl., Dkt. [15-1]
¶ 24.) Plaintiff also alleges that he had no association with the cars described in the
records from 2009. (<u>Id.</u> ¶ 21.) And according to Plaintiff, Defendants were aware of
these differences. (<u>Id.</u> ¶ 24.)

4

AO 72A
(Rev.8/82)

entered a nolle prosequi. (Id. ¶ 29.) It said, "[a]fter a thorough investigation, it

has become known to the State that the Ceasar Rojas named in the above-styled

case is not the same Ceasar Rojas who committed the offense of Statutory Rape

in 2009." (Id.) The court immediately dismissed the case, (Id. ¶ 29), and on

November 24, 2017, Plaintiff filed this lawsuit, (Dkt. [1]). Plaintiff now moves

to amend his Complaint. The proposed Amended Complaint includes three

causes of action against both Defendants under 42 U.S.C. § 1983 for violation

of Plaintiff's rights under the Fourth and Fourteenth Amendments (Counts

1–3), as well as related state-law claims against Defendant Mason (Counts

4–6).

     **B.**    <u>Legal Standard</u>

     Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may

amend a pleading once as a matter of right within twenty-one days after service

of the pleading, or, if the pleading requires a response, within twenty-one days

after service of a responsive pleading or motion filed under Rule 12(b), (e), or

(f). Otherwise, under Rule 15(a)(2), the party must seek leave of court or the

written consent of the opposing parties to amend. Rule 15(a)(2) directs the

Court, however, to "freely give leave when justice so requires." Yet, despite

AO 72A
(Rev.8/82)

this instruction, leave to amend is "by no means automatic." <u>Layfield v. Bill Heard Chevrolet Co.</u>, 607 F.2d 1097, 1099 (5th Cir. 1979).[3] The trial court has "extensive discretion" in deciding whether to grant leave to amend. <u>Campbell v. Emory Clinic</u>, 166 F.3d 1157, 1162 (11th Cir. 1999). A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays, or is futile." <u>Id.</u> A claim is futile if it cannot withstand a motion to dismiss. <u>Fla. Power & Light Co. v. Allis Chalmers Corp.</u>, 85 F.3d 1514, 1520 (11th Cir.1996); <u>see</u> <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying "inadequacy as a matter of law"). In other words, leave to amend will be denied "if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1255 (11th Cir. 2008).

C.    <u>Analysis</u>

Defendants Dunn and Mason oppose Plaintiff's motion on the basis that the proposed amendments are futile. The Court will, therefore, examine the

---

[3] In <u>Bonner v. City of Prichard</u>, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

claims against each Defendant to determine whether they could survive a motion to dismiss.  See Amick v. BM & KM, Inc., 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003) ("[A]mendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.") (citing Vanderberg v. Donaldson, 259 F.3d 1321, 1326–27 (11th Cir. 2001)).

*1.     Defendant Dunn*

The proposed Amended Complaint enumerates three causes of action against Defendant Dunn under 42 U.S.C. § 1983: one under the Fourteenth Amendment entitled "Deprivation of Liberty" (Count 1); and two under the Fourth Amendment for unlawful seizure (Count 2) and malicious prosecution (Count 3).

Section 1983 says,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To prevail on a claim under § 1983, then, a plaintiff must show two things: "(1)

7

that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." <u>Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting <u>Bannum, Inc. v. City of Ft. Lauderdale</u>, 901 F.2d 989, 996–97 (11th Cir. 1990)).

Defendant Dunn—an assistant district attorney—argues Plaintiff's § 1983 claims fail because she is entitled to absolute prosecutorial immunity. The Court agrees. Prosecutorial immunity creates absolute immunity for conduct that is "intimately associated with the judicial phase of the criminal process." <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976) (applying the "well settled" rule of prosecutorial immunity to a § 1983 claim). This immunity applies even in the context of "wrongful or malicious" conduct and includes egregious behavior such as "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence," etc. <u>Hart v. Hodges</u>, 587 F.3d 1288, 1295 (11th Cir. 2009); <u>see also</u> <u>Fullman v. Graddick</u>, 739 F.2d 553, 558–59 (11th Cir. 1984) (finding prosecutorial immunity barred § 1983 claims

8

arising out of prosecutor's alleged signing of an arrest warrant without probable cause, withholding material evidence, and participating in conspiracy to proffer perjured testimony).

Determining if absolute immunity applies involves a functional approach. The Court must look to "the nature of the function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). Prosecutors are only immune for actions related to their role as advocates. Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999). This includes, of course, "initiating a prosecution and [] presenting the State's case," Imbler, 424 U.S. at 431, but also "extends to a prosecutor's acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial," Jones, 174 F.3d at 1281. By contrast, a prosecutor is not entitled to absolute immunity if performing "investigative functions normally performed by a detective or police officer." Buckley, 509 U.S. at 273.

As an initial matter, Dunn's obtaining a bench a bench warrant undeniably fell within her role as an advocate. See Kalina v. Fletcher, 522 U.S. 118, 129 (1997) (holding that a prosecutor's preparation and filing of an information and a motion for an arrest warrant are protected by absolute

9

immunity);[4] Imbler, 424 U.S. at 431 (absolute immunity for initiating a

prosecution); Smith v. Sellers, No. 517CV00497CARCHW, 2018 WL

2424141, at *4 (M.D. Ga. Mar. 14, 2018) (prosecutor's securing a bench

warrant entitled to absolute immunity). However, the proposed Complaint is

transparent in its attempt to characterize other conduct as investigatory or

preliminary and thus beyond the reach of prosecutorial immunity. Specifically,

Plaintiff alleges that Dunn applied for a bench warrant after finding Plaintiff's

---

[4] In Plaintiff's response to Dunn's motion to dismiss he cited Kalina for the proposition that a prosecutor who personally vouches for the truthfulness of facts in support of an application for an arrest warrant does not enjoy absolute immunity for constitutional violations stemming from that conduct. (Pl.'s Br. In Opp. To Def. Dunn's Mot. To Dismiss, Dkt. [11] at 17–18.) That is a correct statement of the law, but it is also inapposite given that the original Complaint had no allegations suggesting that Dunn's own testimony underpinned the bench warrant. Now, however, in the proposed Complaint, Plaintiff alleges that "Dunn swore to the truth of the[] facts" in the warrant application. (Am. Compl., Dkt. [15-1] ¶ 26.) Yet despite Plaintiff's efforts, Kalina's "complaining witness" exception to prosecutorial immunity is still not controlling. Unlike Kalina, Dunn did not seek a bench warrant until *after* the District Attorney's office obtained an indictment against Plaintiff. (Id. ¶ 25.) In Georgia, an indictment must be returned by a grand jury, presupposing probable cause that the individual indicted in fact committed the offense alleged. O.C.G.A. § 17-7-54. And so, the bench warrant obtained by Dunn is fundamentally different than the "Certification for Determination of Probable Cause" for an arrest warrant at issue in Kalina. Kalina, 522 U.S. at 121; see also Holden v. Sticher, 427 F. App'x 749, 753 (11th Cir. 2011) (describing the format of a Georgia bench warrant and finding it more similar to the "information and motion for an arrest warrant in Kalina, both protected by absolute immunity, rather than a personal attestation to the truth of averments in a supplementary certification").

name in a database and making a series of "deductions" that linked him to the 2009 statutory rape of K.N., all while overlooking available evidence that would have made clear Plaintiff and Ceasar Rojas were not one-in-the-same. Assuming the allegations against Dunn are adequate—which, the Court notes, is far from settled[5]—then Plaintiff's claims against her would still fail.  In essence, Plaintiff has attacked, not what Dunn *did* before obtaining a bench warrant, but what she *did not* do.  In other words, Plaintiff's claims are based on the lack of investigatory actions taken by Dunn after she found Plaintiff's name in the government database.  Yet, a prosecutor is absolutely immune from liability for failing to investigate a suspect before filing charges.  See Hart, 587 F.3d at 1295; see also O'Connor v. Nevada, 686 F.2d 749, 750 (9th Cir.1982) (per curiam), aff'g 507 F.Supp. 546, 548–49 (D.Nev.1981) (holding that a prosecutor is immune from liability for failure to investigate adequately the accusations against a defendant before charging).  And to the extent Plaintiff attempts to premise his claims on the act of conducting a database search, itself, the Court finds that position unpersuasive.  Like the prosecutor

---

[5] Dunn also argues that the allegations in the proposed Complaint fail to state a viable claim against her.  However, the Court need not address this argument because the immunity issue is dispositive.

11

defendant in another case, there are no allegations that Dunn ever "left [her]

normal work environment. [She] did not go to the scene of a crime, nor did

[she] participate in a search. All [she] did was obtain and examine information

that was readily available to anyone."[6] Rivera v. Leal, 359 F.3d 1350, 1353

(11th Cir. 2004); see also Mullinax v. McElhenney, 817 F.2d 711, 715 (11th

---

[6] It appears from the proposed Complaint, that Plaintiff attempts to skirt this result by including the qualification that some of the databases "limit accessibility to law enforcement officials only." (Am. Compl., Dkt. [15-1] ¶ 19.) Still, there is no reasonable inference that basic information about Plaintiff–i.e., his name, address, and a few physical characteristics (which Plaintiff alleges is all that Defendants found and relied upon)—was not readily available to those outside of law enforcement. And even if the databases were not accessible by the public, merely "finding" Plaintiff's name entails, at best, a minimal amount of investigation—indeed, probably less than researching and pulling driving records, see Rivera, 359 F.3d at 1352. (See also Am. Compl., Dkt. [15-1] ¶ 20 ("To confirm that they had the right person, the defendants did not investigate beyond their name search in the government database(s)").) Furthermore, like Rivera, there is no suggestion that Dunn "was trying to establish probable cause to arrest [Plaintiff]." Rivera, 359 F.3d at 1353. Rather, according to the proposed Complaint, Defendants took these actions in furtherance of their effort "to *indict* the person known as 'Ceasar Rojas' for the 2009 statutory rape of K.N." (Am. Compl., Dkt. [15-1] ¶ 18 (emphasis added).) "A prosecutor's role as an advocate necessarily entails the development and evaluation of a case prior to the formal initiation of a prosecution." Mullinax v. McElhenney, 817 F.2d 711, 715 (11th Cir. 1987). Thus, the Court finds that Dunn's search-related activities are better characterized as part of her role as an advocate for the state, not as an investigator. It is worth adding though, that even were those actions investigatory, Dunn's later conduct in obtaining a bench warrant without further scrutiny would nonetheless be shielded by prosecutorial immunity. And the Court is unaware of any authority recognizing that the mere unearthing of someone's identifying information violates the Constitution.

Cir. 1987) ("A prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case[.]").  Thus, the Court finds that Dunn functioned as an advocate (not an investigator) at all relevant times.  As a result, prosecutorial immunity shields her actions from suit, and for this reason Plaintiff's proposed amendments are futile as they relate to Defendant Dunn.

### 2.   *Defendant Mason*

Defendant Mason argues that the proposed Complaint is futile because it fails to state a claim against her.  Indeed, apart from the caption and introduction of Mason as an investigator for the Forsyth County District Attorney's Office, Plaintiff names Mason only once in the body of the proposed Complaint.  There, Plaintiff says, "Mason knew that Dunn would use [Plaintiff's] identifying information to indict him and apply for an arrest warrant in his name, but she failed to intervene to stop Dunn."  (Am. Compl., Dkt. [15-1] ¶ 24.)  The proposed Complaint lacks allegations suggesting that Mason played any meaningful role in Plaintiff's indictment, arrest, or prosecution or the events leading up to those things.  Without such allegations, Plaintiff cannot sustain her claims against Defendant Mason.  Thus, the Court

13

finds that these claims, as stated in the proposed Complaint, are futile.[7]

## II.  Motions to Dismiss [6]&[7]

Before Plaintiff sought leave to amend, Defendants moved to dismiss the original Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Having resolved that Plaintiff's Complaint would not survive a motion to dismiss even with the proposed amendments, the Court necessarily finds the original Complaint legally deficient.  See Part I, supra; see also Kivisto v. Soifer, 587 F. App'x 522, 524 (11th Cir. 2014) ("The district court may dismiss a complaint with prejudice on the basis of the immunity defense if a Rule

---

[7] The Court further notes that were it to construe the proposed Complaint so liberally as to attribute all of the actions to both Defendants, Mason would likely be entitled to prosecutorial immunity.  Indeed, the fact that Mason is an investigator as opposed to an actual prosecutor is inconsequential.  It is well-settled that the determination of whether prosecutorial immunity applies turns on "the nature of the function performed, not the identity of the actor who performed it."  Forrester v. White, 484 U.S. 219, 228 (1988).  Thus, if Dunn and Mason both committed the actions (and inactions) attributed to "defendants," each of them would be entitled to absolute prosecutorial immunity for the reasons stated above.

14

12(b)(6) motion demonstrates that the complaint, with all of its allegations accepted as true, indisputably establishes the factual foundation of the defense."). Indeed, aside from parsing down Plaintiff's causes of action, the proposed Complaint includes more factual allegations than the original. Even with such additions, Plaintiff's claims fail as a matter of law. Accordingly, for the reasons stated in Part I, <u>supra</u>, Defendants' motions are **GRANTED**.

### Conclusions

As described above, Plaintiff's Motion for Leave to Amend the Complaint [15] is **DENIED**. Defendant Dunn's Motion to Dismiss [6] and Defendant Mason's Motion to Dismiss [7] are **GRANTED**. Plaintiffs' claims are **DISMISSED**. The Clerk is **DIRECTED** to close the case.

**SO ORDERED**, this _28_ th day of January, 2019.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)